IN THE UNITED STATES DISTRICT COURTS
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

MARY GARRETT,

    **Plaintiff,**

v.                                                                         **Civil Action No.: 1:19-CV-69**
                                                                       **JUDGE KLEEH**

WAL-MART STORES, INC.,

    **Defendant.**

**REPORT AND RECOMMENDATION RECOMMENDING DEFENDANT'S PARTIAL MOTION TO DISMISS BE DENIED, DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT BE GRANTED, AND DEFENDANT'S MOTION TO STRIKE BE DENIED**

    This matter is before the undersigned pursuant to an Order of Referral entered on May 30, 2019, by United States District Court Judge Thomas Kleeh. ECF No. 14. On May 29, 2019, Plaintiff filed a Partial Motion to Dismiss and Motion to Strike Information Contained in the Complaint. ECF No. 10. On June 25, 2019, Defendant filed a Partial Motion to Dismiss and Motion to Strike Immaterial Allegations as to Plaintiff's Amended Complaint. ECF No. 21. This matter has been fully briefed and ripe for a Report and Recommendation to the United States District Court Judge Thomas S. Kleeh. Accordingly, the undersigned **RECOMMENDS** that Defendant's Partial Motion to Dismiss Plaintiff's Complaint and Motion to Strike as to Plaintiff's Complaint be **DENIED as Moot**, Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint be **GRANTED**, and Defendant's Motion to Strike be **DENIED**.

## I.     BACKGROUND

Plaintiff, Mary Garrett, alleged that she started working at Walmart, Store #1544, which is located in Clarksburg, West Virginia in 1997.[1] ECF No. 18, at 3. Subsequently, Plaintiff was temporarily transferred to a new store in Virginia for a temporary store planning assignment. Id. at 15. Plaintiff alleged that she was promised an assistant manager position after she had completed her store planning assignment in Virginia and returned to her home store in West Virginia. Id. Plaintiff alleged that while she was in Virginia, she asked her manager about the management positions. Id. Mr. Hayes stated that Plaintiff would not be promoted and would either have to transfer to a store located in Ohio or be demoted. Id. Plaintiff alleged that the choice to be either demoted or transferred to Ohio was a means of discouraging Plaintiff from seeking management positions.

Plaintiff alleges that another employee with less experience, Robert Yerkey, was then promoted over Plaintiff, in her original store. Id. at 16. Plaintiff alleged "that she was not promoted or given any opportunity to compete for management positions because of her sex." Id. On May 25, 2012, Plaintiff filed her Administrative Charge to the United States Equal Employment Opportunity Commission (hereinafter "EEOC"). ECF No. 18-2. Plaintiff's Administrative Charge reads as follows:

> I was a member of the class in Dukes v. Wal-Mart Stores, Inc., Case No. 01-cv-02252 (N.D. Cal.) ("Dukes"). As such, the statute of limitations on my claim has been tolled during the pendency of the Dukes lawsuit and the representative EEOC charge filed by former named plaintiff and class member, Stephanie Odle. The district court ruled that Ms. Odle's charge, filed October 22, 1999, tolled the statute of limitations for all class members beginning December 26, 1998. Order Granting Leave to Amend, Dkt. 81(Sept. 9, 2002). On June 20, 2011, the Supreme Court reversed the order certifying the nationwide class. The district court subsequently established deadlines for former class members to file timely

---

[1] In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

charges of discrimination with the EEOC alleging conduct encompassed by the former certified class. In non-deferral states, timely charges may be filed by January 27, 2012. In deferral states, the deadline is May 25, 2012. Order Granting in Part Plaintiff's Motion to Extend the Statute of Limitations, Dkt. 760 (Aug. 19, 2011).

I believe that during my employment at Wal-Mart I was discriminated against because of my gender (female) in promotions.

In 1997 I began working at a Wal-Mart in Store #1544 Clarksburg, WV. I began my employment as an hourly associate and stocker in ladies' wear. I also worked in store planning at a new store in Virginia on a temporary basis. I voluntarily terminated my position at Wal-Mart in 2003.

Discrimination in Promotions

I also believe that male employees were given more promotional opportunities than female employees. I inquired about management positions from my supervisor, Michael Haynes. I wanted to transfer back to Clarksburg, WV #1544, my home store. I was told that I would not be promoted at my home store and that I would be required to work in Ohio or be demoted. I believe that this was done to discourage me from seeking a management position. Robert Yerkey, a man with less experience, was promoted to management at the Clarksburg store. I believe that I was not promoted or given any opportunity to compete for management positions because of my sex.

Statement of Discrimination

I believe that I have been discriminated against because of my sex in violation of Title VIII of the Civil Rights Act of 1964, as amended.

ECF No. 18-2, at 2-3.

## II. CONTENTIONS OF THE PARTIES

a. **Complaint**

On May 29, 2019, Plaintiff filed a Complaint against Wal-Mart Stores, Inc. alleging that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for the alleged disparate treatment regarding compensation and promotional opportunities against Plaintiff and alleged disparate impact of Walmart's policies and practices against female employees as to the promotional opportunities and compensation. ECF No. 1.

b.  **Motion to Dismiss/ Motion to Strike Original Complaint**

In its Partial Motion to Dismiss and Motion to Strike Immaterial Allegations, (ECF No. 10), Defendant argued that Plaintiff is attempting to "re-package" the Dukes[2] class action which was dismissed because the class action lacked commonality. Defendant also argued that Plaintiff did not exhaust her administrative remedies with respect to pay discrimination and her disparate impact claims; failed to state a claim upon which relief can be granted for her pay discrimination and disparate impact claims; and does not have standing to challenge the promotional policies of Defendant. Furthermore, Defendant argued that because most of Plaintiff's allegations do not apply to her and are immaterial to this litigation, they should be struck from the Complaint.

c.  **Amended Complaint**

On June 11, 2019, Plaintiff filed an Amended Complaint. ECF No. 18. Plaintiff alleged that Defendant violated Title VIII for the disparate treatment of Plaintiff with regard to compensation and promotion based on her gender and disparate impact discrimination because Defendant's decisions about compensation and promotions had an adverse impact on females in Plaintiff's home store.

Plaintiff pled that she was former member of the Dukes class action lawsuit filed in the Northern District of California. Plaintiff alleged that while the class action was dismissed, Plaintiff timely filed her EEOC charge of discrimination on May 25, 2012, and received a Right to Sue Letter on March 26, 2019. Id. at 3. Plaintiff alleges that women who hold hourly positions in the store where Plaintiff worked were paid less than similarly-situated men, even though the

---

[2] On June 19, 2001, a class action was initiated in the Southern District of California on behalf of the class of female Walmart and Sam's Club employees alleging that the pay and management promotion policies are discriminatory against woman. ECF No. 11, at 2. Plaintiff alleged that the claims of the class members would be tolled until the completion of the class action. According to the Complaint, class members who received a Notice of Right to Sue based on the former class definition had an October 28, 2011 deadline to sue; other former class members with a "non-referral" status would have a January 27, 2012 deadline; and all other members with a "deferral" status would have until May 25, 2012. ECF Nos. 1, 2. On May 25, 2012, Plaintiff filed a charge of discrimination to the EEOC. ECF No. 18-2. On March 26, 2019, Plaintiff received a Notice of Right to Sue letter from the EEOC. ECF No. 18-1.

4

woman often times have more seniority and higher performance ratings. Furthermore, Plaintiff alleges that Walmart's compensation policies have had an adverse impact on female employees. Id. at 7.

Plaintiff has alleged that Defendant violated Title VII for paying Plaintiff "less than similarly-qualified or less-qualified male employees and/or by promoting [woman] less quickly and less frequently than similarly-qualified or less-qualified male employees." ECF No. 18, at 17. Plaintiff alleged that Defendant's discriminatory practices denied Plaintiff promotional opportunities and fair compensation because of her gender. Furthermore, Plaintiff alleged that Defendant "failed . . . to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually." Id. at 18.

### d. Motion to Dismiss/Motion to Strike Amended Complaint

On June 25, 2019, Defendant filed a Partial Motion to Dismiss Plaintiff's Amended Complaint and to Strike Immaterial Allegations. ECF No. 21. In its accompanying memorandum, Defendant argued that Plaintiff failed to state a claim because she failed exhaust her administrative remedies as to her claim for pay discrimination; Plaintiff failed to state a claim as to her disparate impact claims because she failed to exhaust her disparate impact claim; Plaintiff does not have standing to challenge the promotional policies of Defendant; and Plaintiff failed to state a disparate impact claim. Furthermore, Defendant argued that any allegations that do not relate to Plaintiff's disparate treatment relocation claim should be stricken from the record.

Defendant first argued that Plaintiff failed to exhaust her administrative claim as Plaintiff's EEOC charge only alleged promotional discrimination and did not include any allegations as to pay discrimination. Defendant also argued that Plaintiff cannot resubmit her charge to the EEOC as more than 300 days have passed since her employment ended.

Defendant next argued that Plaintiff has failed to exhaust her administrative claims as to pay promotions. Defendant argued that Plaintiff has not specifically cited a facially-neutral policy that is the cause of the disparate impact on a certain group. Defendant argued that Plaintiff provided a "vague allegation that other employees suffered similar discrimination," without properly pleading a disparate impact claim.

Furthermore, Defendant argued that Plaintiff lacks standing to challenge the promotional policies in the Complaint. Defendant argued that, with respect to the disparate impact claim, Plaintiff has not demonstrated that a policy has cause her injury, as required for standing. ECF No. 22, at 10.

Defendant further requested that the following paragraphs be struck from the Complaint for the foregoing reasons:

> ¶¶ 1-2, 82-83, 88, 91-92: references to pay discrimination should be struck because allegations are immaterial to the remaining claim in the case;
>
> ¶¶ 18-34: any allegations regarding pay discrimination regard a claim that has not been fully exhausted;
>
> ¶¶ 35-36, 39-40, 42: any allegations relating to promotional policies and practices that are unrelated to promotional discrimination as to the relocation policy is irrelevant;
>
> ¶¶ 43, 47: allegations that Defendant failed to document decisions is irrelevant to the issue of the litigation and Plaintiff's claim that the policies are not capable of separation for analysis is improper;
>
> ¶¶ 44-82: allegations that Defendant's promotional policies had a disparate impact of woman is immaterial as Plaintiff has not exhausted her disparate impact claim nor has she state a disparate impact claim; and
>
> ¶¶ 87-95: Defendant argues that Count II should be dismissed as previously argued and thus allegations regarding Count II should be struck from the Complaint.

ECF No. 22, at 16-17.

### e. Plaintiff's Response

On July 8, 2019, Plaintiff filed its Response to Defendant's Partial Motion to Dismiss and Motion to Strike Plaintiff's Amended Complaint. ECF No. 26. While Plaintiff argued that her disparate impact claim as to promotional discrimination was properly exhausted and pled, she concedes that her pay discrimination claim was not properly exhausted. First, Plaintiff argued that she properly filed an EEOC charge and filed an update to the discrimination charge explaining that job vacancies were not openly posted, and positions were filled by others being personally selected by other managers. Furthermore, Plaintiff argued that exhaustion is not an onerous standard as Defendant suggested, but rather was satisfied when the EEOC is provided with a written statement that sufficiently identifies the parties and describes the action. Id. at 26.

Plaintiff next argued that she has standing to bring her disparate impact claim because she is the aggrieved party under Title VII. Id. at 6. Finally, Plaintiff argued that she properly pled the disparate impact claim as to promotional discrimination because "the entire decision making process for compensation and promotion decisions may be analyzed as one employment practice. 42 U.S.C.e-2(k)(1)(B)(i)." ECF No. 26, at 7. Plaintiff stated that "'subjective decision-making' can be challenged as a single practice that does not require isolating the effect of each specific practice, where plaintiffs demonstrate 'the elements of [an employer's] decision-making process are not capable of separation or analysis.'" ECF No. 26, at 8.

### f. Defendant's Reply

On July 15, 2019, Defendant filed a Reply to Plaintiff's Response regarding Defendant's Partial Motion to Dismiss. ECF No. 27. Defendant reiterated its argument that Plaintiff failed to exhaust her disparate impact claim and argued that Plaintiff's Charge was tailored to her individual claims. Id. at 1-2. Defendant further argued that Plaintiff only discussed Walmart's policies or practices to explain why she could not provide certain factual details. Id. at 3.

Defendant stated that because Plaintiff's employment ended more than 300 days ago, she cannot no longer amend her charge to provide the EEOC with this information. Id. at 4.

Defendant also reiterated its previous argument regarding Plaintiff's lack of standing to bring a disparate impact claim. Id. at 4-5. Defendant argued that Plaintiff's claim was for disparate treatment rather than disparate impact. Defendant argued that she was a "victim" of disparate treatment *only* and thus did not have standing to bring a disparate impact claim.

Finally, Defendant reiterates its argument that Plaintiff has failed to state a claim as to her disparate impact claims. Defendant argued that the assertion that Wal-Mart's policies cannot be separated for analysis is wrong and its plaintiff's burden to "isolate the policies alleged to have had a disparate impact and [she] cannot avoid that burden by simply alleging policies are incapable of separate without explaining why." Id. at 7. Defendant argued that Plaintiff is erroneously grouping "subjective decision-making" decisions as a single practice and Defendant argued that "there is no reason that a relocation requirement cannot be distinguished from policies regarding job postings and job-related criteria for promotions." Id. at 8.

### III.   LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)). The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Additionally, courts must "liberally construe" complaints filed *pro se*. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where . . . a pro se complaint rais[es] civil rights issues") (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)).

## IV.     ANALYSIS

### a.     *Plaintiff failed to exhaust her pay discrimination claim.*

Defendant argued that Plaintiff failed to exhaust her claim of pay discrimination and the Amended Complaint should be dismissed because the Administrative Charge does not allege pay discrimination, and thus failed to exhaust any pay discrimination claims. In Plaintiff's Response, Plaintiff conceded that the disparate pay claims should be dismissed because of Plaintiff's failure to exhaust a pay discrimination claim. Dismissal is appropriate where a plaintiff has failed to exhaust administrative remedies, as required under Title VII. See Chacko v. Patuxent Inst., 429 F.3d 505, 513 (4th Cir. 2005). Accordingly, the undersigned **RECOMMENDS** that the Partial Motion to Dismiss Plaintiff's Amended Complaint be **GRANTED** as to the disparate pay claims.

### b.     *Plaintiff failed to exhaust her disparate impact claim*

Defendant argued that plaintiff failed to properly exhaust her disparate impact claim because her EEOC charge did not contain a facially-neutral policy. ECF No. 22, at 6. Plaintiff responded that she had properly exhausted her administrative remedies because the purpose of the exhaustion is to place the defendant on notice of the pending claims and provide an opportunity to settle disputes, which Plaintiff argued that she had done. ECF No. 26, at 4. Plaintiff further argued that her charge stated that she was a member of the Dukes class action

9

and had the same investigator as the disparate impact class action so that the investigator should have known it was a disparate impact claim. Id. Plaintiff argued that her update to the original Charge includes language about the policies or lack of policies regarding promotional discrimination and supports her argument that her disparate impact claim for promotional discrimination was properly exhausted. Id. at 5.

Title VII of the Civil Rights Act of 1964 authorizes both disparate treatment and disparate impact claims as relief for discrimination, but each claim requires proof of different elements. A disparate treatment claim requires demonstration of a discriminatory motive of the employer, while a disparate impact claim requires proof that there are "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993).

In order to pursue either claim, a plaintiff must exhaust their administrative remedies before seeking judicial review of the case. Balas v. Huntington Ingalls Indust., 711 F.3d 401, 406 (4th Cir. 2013). Exhaustion of claims is an "integral part of the Title VII enforcement scheme." Chacko, 429 F.3d at 510. So integral, that dismissal is appropriate where a plaintiff has failed to exhaust administrative remedies. Id. Exhaustion of administrative remedies is done through filing a formal charge with the EEOC, which notifies the charged party of the aggrieved party's allegations. Balas, 711 F.3d at 407. Title 29, Code of Federal Regulations, Section 1601.12 requires that each charge contain: the full name, address and telephone number of the person making the charge; the full name and address of the person against whom the charge is made; a clear and concise statement of the facts, including pertinent dates, constituting the alleged

unlawful employment practices; the approximately number of employees; and a statement of whether the unlawful employment practice had previously commenced.

> Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, *the Commission shall serve a notice of the charge* (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. *Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.*

42 U.S.C. § 2000e-5(b) (emphasis added).

Once a charge is submitted to the EEOC, the Commission then has investigative power. See generally, 29 C.F.R. § 1601.15(b). This allows the Commission to request: "a statement of each specific harm that the person has suffered and the date on which each harm occurred; for each harm, a statement specifying the act, policy or practice which is alleged to be unlawful; and for each act, policy, or practice alleged to have harmed the person claiming to be aggrieved, a statement of the facts which lead the person claiming to be aggrieved to believe that the act, policy or practice is discriminatory." Id. Following this procedure, a plaintiff will receive a notice of right to sue.

Once a case is brought in federal court, the court "may only consider those allegations included in the EEOC charge," and "any other claims that 'would naturally have arisen from an investigation' are procedurally barred." Abdus-Shadid, 674 Fed App'x 267, 274 (4th Cir. 2017) (quoting Balas, 711 F.3d at 407)). "[A]llegation[s] of a discrete act or acts in an administrative charge [are] insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." Chacko, 429 F.3d at 509. Exhaustion, however, is not meant to serve as a tripwire

11

for plaintiffs, but rather as a safeguard to stop parties from circumventing statutory requirements. Sydnor v. Fairfax County, Va., 681 F.3d 591 (4th Cir. 2012). The administrative charge "does not strictly limit a Title VII suit which may follow." Id. at 594. So as long as "the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." Chacko, 429 F.3d at 509 (citing Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000)).

Furthermore, a charge may be amended "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." Id.

In Abdus-Shadid, 674 Fed App'x at 267, the Fourth Circuit Court of Appeals reviewed the issue of exhaustion after a man filed an administrative charge alleging he did not receive insurance benefits and was therefore discriminated against under Title VII because of his religion.[3] The Fourth Circuit found that the plaintiff had failed to exhaust his administrative remedies as to his disparate impact claim because the plaintiff's charge was actually a disparate treatment claim, as he claimed his insurance benefits were denied because of his religion.

---

[3] The entirety of Plaintiff's charge is as follows:
   I. I began my employment with the City of Baltimore in February 2008. I am currently employed as a Construction Project Supervisor II in the Department of Transportation. In or about July 2013, an audit was conducted which resulted in my family being dropped from my health insurance without explanation. I was informed I could re-enroll them during the general open enrollment period in November 2013. When I completed the forms to provide coverage for my family, I was informed my Islamic marriage is not recognize (sic); therefore, I have been unable to reinstate my wife to my health insurance plan. My wife had been covered for years prior to the audit. I am aware of another employee who is experiencing the same issue.
   II. I have been given no explanation for the employer's actions.
   III. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, regarding benefits because of my religion, Muslim.
1:15-CV-1972, (D. Md. 2015) Docket No. 2, at 15.

Specifically, the Fourth Circuit stated that the plaintiff did not identify a policy that the plaintiff believed to be facially neutral and discriminatory nor did plaintiff provide any factual allegations that would conclude that Muslims were "being disproportionately impacted." The Fourth Circuit found that the plaintiff simply claimed a co-worker had experienced the "same issue," which the Court found to be vague and did "not suggest anything more than discrete discriminatory acts." Id. at 275. The Fourth Circuit also discounted the plaintiff's argument that his adversary's motion to dismiss was granted because his EEOC charge lacked certain legal terminology that a *pro se* litigant would not understand to include.

Rather, in analyzing the words that were actually used in the charge (and considering the charge broadly), the Fourth Circuit found that the EEOC charge did "not correlate to the sort of assertions and facts from which a future cause of action based on disparate impact can be discerned." Id. at 275 (citing Chacko, 429 F.3d at 505); see also Burgis v. New York City Dep't of Sanitation, 798 F.3d at 71 (2d. Cir. 2015) (affirming dismissal of disparate impact claim for failure to exhaust where the EEOC charge "complain[ed] of individualized disparate treatment.); Pacheco v. Mineta, 448 F.3d 783 (5th Cir. 2006) (concluding plaintiff failed to exhaust remedies as to a disparate impact theory where the EEOC charge "facially alleged disparate treatment," "identified no neutral employment policy," and "complained of past incidents of disparate treatment only.").

Furthermore, several courts have found a plaintiff's failure to exhaust a disparate impact claim when the plaintiff failed to identify a facially neutral employment policy in the administrative charge. Brown v. Ameriprise Fin. Servs., Inc., 707 F. Supp. 2d. 971, 976 (D. Minn 2010); Butler v. Matsushita Commc'ns Indus. Corp. of United States, 203 F.R.D. 575, 582 (N.D. Ga. 2001); Ingram v. Vanguard Grp., Inc., No. 14-3674, 2015 WL 4394274 (E.D. Pa. July

13

17, 2015); Rogers v. Fed. Express Corp., No. 06-CV-0313, 2007 WL 2891550 (N.D. Okla Sept. 28, 2007); Carpenter v. Virginia Dept of Transp., No. 5:06CV00035, 2006 WL 3314436, at *4 (W.D. Va. Nov. 14, 2006);.

In analyzing whether a disparate impact claim was properly exhausted, and as done by the Fourth Circuit in Abdus-Shahid, the undersigned is reviewing the exhaustion requirement based on the language that was actually presented in the Charge rather than specific legal terminology. Plaintiff's main contention is that she was disparately treated for failure to be promoted and that this occurred because she was a woman. The factual allegations contained in the Charge are wholly different from the allegations contained in the Complaint. Plaintiff's Charge limits the factual allegations to her alleged personal discrimination. Plaintiff's Complaint broadens her claims to encompass female employees as a whole who are impacted by policies and procedures that favor men over women. Plaintiff failed to mention any policies or practices that Walmart utilized at all, let alone ones that were discriminatorily impactful.

Plaintiff's Charge only casually mentioned that she believed this to have occurred to other female employees. Plaintiff provided no further explanation for her accusation. This statement alone is vague and is not supported by any other factual assertions in the charge from which the disparate impact claim could evolve. Abdus-Shadid, 674 Fed App'x at 276.

Furthermore, in Plaintiff's Response, Plaintiff stated that she had sufficiently exhausted her administrative remedies prior to the filing of the Complaint for several reasons, including citing to the "update" to the Administrative Charge.[4] Plaintiff defines Appendix A of her

---

[4] Courts have found that "questionnaires" can be considered in the exhaustion analysis, however, only when the original charge is not what the plaintiff initially intended it to be by negligence or error of the Agency. Russell v. Am. Tobacco Co., 528 F.2d 357 (4th Cir. 1975); B.K.B. v. Maui Police Dep't., 276 F.3d 1091 (9th Cir. 2002); Sickinger v. Mega Sys. Inc., 951 F. Supp 153 (N.D. Ind. 1996) (holding that plaintiff met the exhaustion requirement where the EEOC representative who assisted her in filing her EEOC charge failed to include allegations of wrongful retaliation that she had included in her questionnaire); Anthony v. Co. of Sacramento, 898 F.Supp. 1435 (E.D. Cal 1995); Carpenter v. Virginia Dep't of Transp., No. 5:06CV00035, 2006 WL 3314436 (W.D. Va. Nov. 14,

Response as an "update"[5] to her original charge which was completed at the request of the EEOC.[6] Plaintiff uses this document as support for her contention that Walmart's policies had a disparate impact on female employees were properly presented to the EEOC. For the purposes of consideration of this Motion only,[7] the undersigned does not consider this document to be an amended charge even though it may serve the purpose of curing technical defects or omissions nor clarifies or amplifies allegations made in the original charge. Balas, 711 F.3d at 408 ("The intake questionnaire and the letters Balas submitted to the EEOC cannot be read as part of her formal discrimination charge without contravening the purposes of Title VII."). In this particular situation, the administrative charge alone is the operative document that dictates the limits of the Complaint.

---

2006). The undersigned, however, does not consider this questionnaire in the exhaustion analysis because there have been no allegations that Agency employees helped Plaintiff negligently fill out her administrative Charge nor did the Agency leave information out that plaintiff wanted in the Charge.

[5] Defendant argues that the Court should ignore this document as it was attached to the Response to the Motion to Dismiss and was not provided in the original proceedings. The undersigned will not analyze whether this document should be considered because the undersigned has determined for the purposes of this Motion that this "Questionnaire" is irrelevant to the disposition of Defendant's Motion. The undersigned does not consider this document in the analysis beyond discounting its applicability to Plaintiff's rebuttal of Defendant's Motion. The undersigned is not analyzing whether considering matters outside of the pleadings converts the instant Motion into a Motion for Summary Judgment as the undersigned is not considering this document in its substantive analysis.

[6] The following paragraph was added to the update:

> Job vacancies were not regularly posted at Wal-Mart, and the company did not have a system for informing employees of when jobs were filled or who was selected to fill them. Indeed, many people are selected at one time for the Manager in Training program, so even if I had all their names, I could not say which person in particular was selected instead of me. As such, I am not aware of specific males who were selected for the position(s) which I was denied. Moreover, because there was no process to apply for promotion to Manager in Training, the route to becoming an Assistant Manager, I cannot state the dates when I applied, although I expressed my interest in promotion into management. I am aware that the statistical analysis of Dr. Drogin in the Dukes v. Wal-Mart case found an overall pattern of disparities between men and women at the company with respect to promotion into management positions, and promotions from lower level to higher level management positions. These findings, in each of Wal-Mart's regions, are consistent with my experiences being denied or delayed in receiving promotions.

ECF No. 26-1, at 5.

[7] Rather, the undersigned views this document, completed at the request of the EEOC, as a tool used for investigative purposes pursuant to the EEOC's "investigative power." According to the regulations required, an administrative charge be completed under oath or affirmation and in the form that the EEOC requires. This document was in questionnaire form and made at the request of the EEOC itself.

Lastly, Plaintiff argued that because the EEOC investigator was the same investigator involved in the Dukes class action lawsuit, the investigator should have known that Plaintiff was making a disparate impact claim. The Charge's purpose, however, is to serve notice to the employer of the allegations. Thus, Plaintiff's assertion that the investigator should have known that this claim was a disparate impact claim because this Plaintiff was involved in the Dukes class action does not support her argument that her claim was properly exhausted. Accordingly, the undersigned **FINDS** that Plaintiff has failed to exhaust her administrative remedies with regard to her disparate impact claims and **RECOMMENDS** that the Partial Motion to Dismiss be **GRANTED** with regard to the promotional disparate impact claim.

    *c.*    *Defendant's Motion to Strike*

Defendant's Motion to Strike requested that certain paragraphs be struck from the Complaint as immaterial and irrelevant due to the dismissal of some of the claims. Rule 12(f) states:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1)    on its own; or
> (2)    on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

F.R. Civ. P. 12(f). The Motion to Strike was made as to the Complaint which was required to have been made prior to the response to the pleading. Defendant, however, filed its responsive pleading to Plaintiff's Complaint, ECF No. 9 and 20, prior to the Motion to Strike, ECF Nos. 10 and 21. Accordingly, the undersigned **RECOMMENDS** that Motion to Strike be **DENIED**.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Partial Motion to Dismiss be **DENIED as Moot**; Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint[8] be **GRANTED** for failure to state a claim; and Defendant's Motion to Strike be **DENIED.**

Any party shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

---

[8] If the District Court adopts the undersigned's recommendations in their entirety, the only remaining claim is the disparate treatment of plaintiff for promotional discrimination.

The Clerk of the Court is **DIRECTED** to provide a Copy of this Report and Recommendation of counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Date: August 7, 2019

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE